IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| REGIONAL HOUSING & COMMUNITY | ) | PROPOSED |
| SERVICES CORP., et al., | ) | Jointly Administered Under |
| | ) | CASE NO. 21-41034-pwb |
| Debtors. | ) | |
| | ) | |

## MOTION FOR AUTHORITY TO USE CASH COLLATERAL

COME NOW the above-captioned debtors and debtors and debtors-in-possession (collectively, the "**Debtors**")[1] in the above-styled proposed jointly administered case (the "**Case**"),[2] pursuant to 11 U.S.C. § 363 and Fed. R. Bankr. P. 4001, and files this Motion for Authority to Use Cash Collateral (the "**Motion**") seeking entry of an order authorizing the Debtor to use cash collateral. In support of the Motion, the Debtor shows the Court as follows.

### Jurisdiction and Venue

1.

This Court has jurisdiction of this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper in this Court

---

[1]    The Debtors in these Chapter 11 cases include:  Regional Housing & Community Services Corporation, RHCSC Columbus AL Holdings LLC, RHCSC Columbus Health Holdings LLC, RHCSC Douglas AL Holdings LLC, RHCSC Douglas Health Holdings LLC, RHCSC Gainesville AL Holdings LLC, RHCSC Gainesville Health Holdings LLC, RHCSC Montgomery I AL Holdings LLC, RHCSC Montgomery I Health Holdings LLC, RHCSC Montgomery II AL Holdings LLC, RHCSC Montgomery II Health Holdings LLC, RHCSC Rome AL Holdings LLC, RHCSC Rome Health Holdings LLC, RHCSC Savannah AL Holdings LLC, RHCSC Savannah Health Holdings LLC, RHCSC Social Circle AL Holdings LLC, and RHCSC Social Circle Health Holdings LLC.

[2]    The Debtors have requested joint administration of their cases.  In contemplation of joint administration, the Debtors are filing all first day motions (other than the joint administration motion) solely in the main case styled above.

pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the Motion are Section 363 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## <u>Background</u>

2.

On August 26, 2021 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  As of the date of this filing, no official committee of unsecured creditors has been appointed, and no request for the appointment of a trustee or examiner has been made.

3.

Eight of the Debtors (each a "**Property Company**" and collectively, the "**Property Companies**") own a senior living facility (each a "**Facility**" collectively, the "**Facilities**").  Eight separate Debtors (each an "**Operating Company**" and collectively the "**Operating Companies**") lease a Facility from the Property Companies.  Debtor Regional Housing & Community Services Corp. ("**Regional**") is the 100% owner and single member of each of the Property Companies and the Operating Companies.  The Operating Companies have each entered into a Management Agreement (the "**Management Agreements**") with ALG Senior, LLC ("**ALG**") to manage the operations of the Facility that each Operating Company leases from a Property Company.  Each Facility is a senior care facility located in a rural city or town in Georgia or Alabama.  The Facilities, collectively, house approximately 218 senior residents.  ALG and the Debtors take their obligations to care for the residents at the facilities seriously.  More information regarding the

Debtors and their operations can be found in the *Declaration of Katie S. Goodman in Support of First Day Applications and Motions* (the "**Goodman Declaration**"), filed of even date herewith.

4.

With respect to each Facility owned by a Property Company and leased and operated by an Operating Company, the Wisconsin Public Finance Authority (the "**Bond Authority**") issued Series 2018A, Series 2018B, Series 2018C and Series 2018D Revenue Refunding Bonds (the "**Bonds**"). The Operating Company and the Property Company for that Facility entered into a Pre-Petition Loan Agreement with the Bond Authority. The Bond Authority assigned its rights and interest in the Bonds and the related documents to Huntington National Bank, as trustee, in contemporaneously executed Trust Indentures (the "**Indentures**"). UMB Bank, N.A. is the successor trustee (the "**Trustee**") under the Indentures and Tortoise Credit Strategies, LLC ("**Tortoise**") is the noteholder representative with respect to such Bonds.

5.

As of the Petition Date, the Debtors (other than Regional Housing & Community Services Corporation) were indebted to Trustee in the approximate collective principal amount of $46,791,827.83, plus $8,686,267.40 for obligations for contract interest, default interest and charges, legal fees, and certain fees and charges (collectively, the "**Pre-Petition Obligations**"), under various Loan Agreements dated June 1, 2018 (the "**Pre-Petition Loan Agreements**"; together, with all related agreements, documents and instruments, the "**Pre-Petition Bond Documents**"). The Debtors are now seeking to obtain post-petition financing, consisting of a superpriority, secured term credit facility in the principal amount of up to $5,000,000 (the "**DIP Facility**") from a Special Purpose Entity controlled by Saybrook Fund Advisors, LLC (the "**DIP Lender**"), pursuant to the terms of a Debtor-In-Possession Loan and Security Agreement (the

"**DIP Loan Agreement**").  In addition, the Debtors will need access to cash which may be cash collateral of the Trustee pursuant to Section 363 of the Bankruptcy Code.  The DIP Facility is intended to be a supplement to, and not a substitute for, the Debtors' use of cash collateral.

### **Relief Requested**

6.

The Debtors seek entry of an order authorizing the use of cash collateral in accordance with a proposed budget attached hereto as <u>Exhibit A</u> (the "**Budget**"), which Budget may be modified pursuant to the terms of any order approving the DIP Facility.  A form of order which sets forth the terms on which the Debtor would be authorized to use cash collateral is attached hereto as <u>Exhibit B</u>.

7.

The Debtors' use of cash collateral is essential to the continued operation of their businesses, to maintain the value of the Facilities, to protect the residents of the Facilities and for an effective reorganization.  The Debtors do not propose to use cash collateral to pay any amounts due and owing prior to the Petition Date absent further order of the Court.  However, because of the nature of the Debtors' businesses, they must have use of cash collateral to meet their ongoing obligations and to preserve the value of their assets.  Therefore, the use of cash collateral is in the best interest of the Debtors, their estates and their creditors.

8.

The Debtors are willing to provide adequate protection for the use of cash collateral as follows:

(a)    The Trustee shall be given a replacement lien (the "**Adequate Protection Lien**") on all of the Debtors assets, and proceeds thereof, to the extent such pre-petition liens are

valid, properly perfected and enforceable interests, and in the same relative priority, except that, pursuant to the DIP Loan Agreement and any order entered in connection therewith, the Adequate Protection Lien would be subordinate to (a) the liens granted to the DIP Lender pursuant to the DIP Loan Agreement and any order entered in connection therewith, and (b) the Carve-Out provided for in the DIP Loan Agreement and any order entered in connection therewith; and

(b)     Cash collateral may only be used for items set forth in the Budget (unless otherwise ordered by the Court).

WHEREFORE, the Debtors request that this Court: (a) schedule a hearing on this Motion to be heard as soon as feasible; (b) enter an order granting this Motion at the conclusion of such hearing; and (c) grant the Debtors such other and further relief as is just and proper.

This 27th day of August, 2021.

SCROGGINS & WILLIAMSON, P.C.
By: */s/ Matthew W. Levin*
    J. ROBERT WILLIAMSON
    Georgia Bar No. 765214
    ASHLEY REYNOLDS RAY
    Georgia Bar No. 601559
    MATTHEW W. LEVIN
    Georgia Bar No. 448270

4401 Northside Parkway
Suite 450
Atlanta, Georgia 30327
T: (404) 893-3880
F: (404) 893-3886
E: rwilliamson@swlawfirm.com
   aray@swlawfirm.com
   mlevin@swlawfirm.com

*Proposed Counsel for the Debtors*

## EXHIBIT A

**Budget**

Regional Housing & Community Services Corp.
DIP Budget 8/26/21

| | Week 1 8/28/2021 | Week 2 9/4/2021 | Week 3 9/11/2021 | Week 4 9/18/2021 | Week 5 9/25/2021 | Week 6 10/2/2021 | Week 7 10/9/2021 | Week 8 10/16/2021 | Week 9 10/23/2021 | Week 10 10/30/2021 | Week 11 11/6/2021 | Week 12 11/13/2021 | Week 13 11/20/2021 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 150 | 20,150 | 200,778 | 5,913 | 72,088 | 20,802 | 27,847 | 20,729 | 105,470 | 54,185 | 40,812 | 152,534 | 145,035 | 150 |
| Cash Collections | 20,000 | 34,039 | 226,529 | 198,751 | 30,285 | 34,039 | 226,529 | 198,751 | 30,285 | 7,693 | 34,039 | 226,529 | 198,751 | 1,466,219 |
| Draw on DIP | - | 600,000 | - | - | 250,000 | - | 300,000 | - | 250,000 | - | 100,000 | - | - | 1,500,000 |
| **Cash Available** | 20,150 | 654,189 | 427,307 | 204,663 | 352,372 | 54,841 | 554,377 | 219,479 | 385,755 | 61,878 | 174,851 | 379,064 | 343,785 | |
| **Cash Expenditures** | | | | | | | | | | | | | | |
| Payroll | - | - | 159,789 | - | 159,789 | - | 159,789 | - | 159,789 | - | - | 159,789 | - | 798,946 |
| Payroll Tax | - | - | 12,052 | - | 12,052 | - | 12,052 | - | 12,052 | - | - | 12,052 | - | 60,258 |
| Monthly Insurance GL PL Auto | - | 336,300 | 190,527 | - | - | - | 190,527 | - | - | - | - | - | - | 717,354 |
| Petty Cash | - | - | 4,740 | 1,850 | - | - | 4,740 | 1,850 | - | 4,200 | - | 4,740 | 1,850 | 23,970 |
| Bank Fees | - | 2,805 | - | - | 2,803 | 2 | - | - | 2,803 | - | 2 | - | - | 8,414 |
| Management Fee | - | 3,216 | 11,326 | 9,938 | 1,514 | 1,702 | 11,326 | 9,938 | 1,514 | 385 | 1,702 | 11,326 | 9,938 | 73,825 |
| Rent / Lease Equipment | - | 1,000 | 1,431 | 2,149 | 784 | 1,518 | - | 3,582 | 784 | 1,100 | 419 | 3,583 | 370 | 16,720 |
| Resident Refund | - | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | - | 7,000 | 7,000 | 7,000 | 77,000 |
| Food and other supplies | - | 8,294 | 16,520 | 6,293 | 12,472 | 16,421 | 17,530 | 6,293 | 12,472 | 14,607 | 7,284 | 17,530 | 6,293 | 142,011 |
| Utilities | - | 34,796 | 4,900 | 66,419 | 35,192 | - | 4,900 | 66,419 | 35,192 | 775 | 5,909 | 4,900 | 66,419 | 335,136 |
| Other | - | 10,000 | 13,109 | 18,928 | 9,965 | 350 | 18,668 | 18,928 | 9,965 | - | - | 13,109 | 18,928 | 138,632 |
| **Total Business Expenditures** | - | 403,411 | 421,394 | 112,576 | 241,570 | 26,994 | 426,532 | 114,009 | 241,570 | 21,065 | 22,316 | 234,029 | 110,797 | 2,376,265 |
| Debtor Counsel | | | | | 60,000 | | | | 60,000 | | | | 60,000 | 180,000 |
| Debtor CRO | | | | | 30,000 | | | | 30,000 | | | | 30,000 | 90,000 |
| DIP Lender (Fees / Expenses / Interest) | | 50,000 | | 20,000 | | | | | | | | | | 70,000 |
| Claims Agent | | | | | 15,000 | | | | 15,000 | | | | 15,000 | 45,000 |
| US Trustee | | | | | | | 107,116 | | | | | | | 107,116 |
| **Total Bankruptcy Related Costs** | - | 50,000 | - | 20,000 | 105,000 | - | 107,116 | - | 105,000 | - | - | - | 105,000 | 492,116 |
| **Ending Cash** | 20,150 | 200,778 | 5,913 | 72,088 | 20,802 | 27,847 | 20,729 | 105,470 | 54,185 | 40,812 | 152,534 | 145,035 | 142,388 | 142,388 |

**<u>EXHIBIT B</u>**

**Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| REGIONAL HOUSING & COMMUNITY | ) | PROPOSED |
| SERVICES CORP., et al., | ) | Jointly Administered Under |
| | ) | CASE NO. 21-41034-pwb |
| Debtors. | ) | |
| | ) | |

**INTERIM ORDER ON DEBTOR'S MOTION FOR AUTHORITY TO USE
CASH COLLATERAL AND NOTICE OF FINAL HEARING**

This matter came before the Court for hearing at 2:00 p.m. on August 31, 2021 (the

"**Hearing**") on the *Motion for Authority to Use Cash Collateral* (the "**Motion**") filed on

August 27, 2021 [Dkt. No. ____], by the above-captioned debtors and debtors and debtors-in-

possession (collectively, the "**Debtors**")[1], in the above-captioned jointly administered Chapter 11

case (1) requesting authority to use Cash Collateral (as defined below) pursuant to Section 363 of

Title 11 of the United States Code (the "**Bankruptcy Code**"); and (2) seeking authorization to

provide adequate protection to UMB Bank, N.A. as the successor trustee (the "**Trustee**") under

the Indentures.[2]

Based upon the Court's consideration of the Motion, and all matters brought to the Court's

attention at the Hearing, pursuant to Rules 4001(b) and (d) of the Federal Rules of Bankruptcy

---

[1]       The Debtors in these Chapter 11 cases include:  Regional Housing & Community Services Corporation, RHCSC Columbus AL Holdings LLC, RHCSC Columbus Health Holdings LLC, RHCSC Douglas AL Holdings LLC, RHCSC Douglas Health Holdings LLC, RHCSC Gainesville AL Holdings LLC, RHCSC Gainesville Health Holdings LLC, RHCSC Montgomery I AL Holdings LLC, RHCSC Montgomery I Health Holdings LLC, RHCSC Montgomery II AL Holdings LLC, RHCSC Montgomery II Health Holdings LLC, RHCSC Rome AL Holdings LLC, RHCSC Rome Health Holdings LLC, RHCSC Savannah AL Holdings LLC, RHCSC Savannah Health Holdings LLC, RHCSC Social Circle AL Holdings LLC, and RHCSC Social Circle Health Holdings LLC.

[2]       Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

Procedure (the "**Bankruptcy Rules**"), and after due deliberation and consideration, the Court, based on the representations made on an interim basis, makes the following findings of fact and conclusions of law applicable to the Debtors' use of Cash Collateral (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*).

      **A.**    <u>**Petition Date**</u>.  On August 26, 2021 (the "**Petition Date**"), the Debtors filed with the Court their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code and are continuing to manage its properties and to operate its business as debtor-in-possession pursuant to Section 1107 and 1108 of the Bankruptcy Code.  The Debtors cases (collectively, the "**Cases**") are being jointly administered.

      **B.**    <u>**Pre-Petition Debt and Liens**</u>.

The Trustee asserts that as of the Petition Date, the Debtors were indebted to the Trustee in various amounts under the Indentures for loans to the Debtors in excess of $55 million (collectively), including principal, interest and fees (the "**Pre-Petition Debt**").  As security for the payment of the Pre-Petition Debt, the Trustee asserts that the Debtors granted to the Trustee pursuant to the Indentures and related documents (collectively, the "**Pre-Petition Bond Documents**"), security interests in and liens (collectively, the "**Pre-Petition Liens**") upon all of the Debtors' assets, together with all cash and non-cash proceeds thereof (collectively, the "**Pre-Petition Collateral**").

      **C.**    <u>**Need for Use of Cash Collateral**</u>.  The Debtors require the use of Cash Collateral to continue operating their businesses, including making payroll, paying vendors and suppliers for post-petition obligations, and meeting ordinary working capital expenses.  Potentially irreparable harm to the Debtors, their creditors, their residents and their estates may occur absent authorization for the use of Cash Collateral.

**D.**    **The DIP Financing**.  Concurrently with the filing of the Motion, the Debtors also filed a motion (the "**DIP Loan Motion**") seeking approval of debtor-in-possession financing consisting of a superpriority, secured term credit facility in the principal amount of up to $5,000,000 (the "**DIP Facility**") from a Special Purpose Entity controlled by Saybrook Fund Advisors, LLC (the "**DIP Lender**"), pursuant to the terms of a Debtor-In-Possession Loan and Security Agreement (the "**DIP Loan Agreement**").  The DIP Loan Motion requests that the Court grant the DIP Lender first priority liens on all assets of the Debtors, superior to the Pre-Petition Liens and any adequate protection liens granted to the Trustee post-petition, to secure the amounts advanced by the DIP Lender under the DIP Loan Agreement (the "**DIP Liens**").

**E.**    **Service of Motion; Objections**.  The Debtors have certified that copies of the Motion and notice of the Hearing have been served by electronic mail, telecopy transmission, hand delivery, overnight courier or first class United States mail upon the Trustee, the 20 largest unsecured creditors in the Cases, the U.S. Trustee and other interested parties.  The Court finds that notice of the Motion, as it relates to this Order, is sufficient for all purposes under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, Sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) and (d).

**F.**    **Finding Cause**.  Good cause has been shown for the entry of this Order, the granting of adequate protection as set forth herein and authorization for the Debtors to use Cash Collateral during the Interim Period (as defined below).  The Debtors' need for use of Cash Collateral is ongoing, immediate and critical.  Entry of this Order will preserve the assets of Debtors' estates and their value and is in the best interests of the Debtors, their creditors, their residents and the Debtors' estates.

G.      **Jurisdiction; Core Proceeding; Venue**.  This Court has jurisdiction to enter this Order pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2).  Venue for these Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

H.      **Adequate Protection**.  The Trustee is entitled, at this point in the proceedings, to adequate protection of its interests (if any) in the Pre-Petition Collateral under Sections 361 and 363 of the Bankruptcy Code, as set forth herein.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

1.      **Grant of Motion; Use of Cash Collateral**.

(a)      Subject to all of the terms, conditions and limitations of this Order, the Debtors shall be authorized to use Cash Collateral (as defined below) for Permitted Purposes (as defined below) during the period (the "**Interim Period**") commencing on the Petition Date, and ending on the date of the Final Hearing (defined below), unless otherwise extended by the DIP Lender.

(b)      The term "**Cash Collateral**" shall mean all monies (i) in the possession of the Debtors on the Petition Date that constituted Pre-Petition Collateral, and (ii) received by the Debtors after the Petition Date in respect of or arising out of Debtors' use, sale, consumption, collection, or other disposition of the Pre-Petition Collateral or Replacement Collateral (as defined below).

(c)      The term "**Permitted Purposes**" shall mean the use by the Debtors of Cash Collateral in the ordinary course of the Debtors' business solely for the purposes of supporting the Debtors' ongoing working capital needs, to the extent and up to the amounts set forth in the budget attached to this Order (as may be amended with the written consent of the DIP Lender and the

Debtors, the "**Budget**"), including a ten percent (10%) permitted variance on aggregate disbursements during any calendar week.  Expenses not paid in prior weeks may be carried over in subsequent weeks in the Budget.  Notwithstanding the foregoing, no Cash Collateral may be used pursuant to the Budget or otherwise to pay any pre-petition claim against the Debtors other than amounts specifically approved by the Court after notice and hearing.

2.     **Collection of Accounts Receivable**.  The Debtors shall diligently attempt to collect all of its pre-petition and post-petition accounts receivable and all other rights to the payment of money and shall cause all such collections remitted by its customers and other account obligors to be promptly deposited in the Debtors' debtor in possession accounts, which may consist of deposit accounts in existence prior to the Petition Date and used in connection with the Debtors' pre-petition cash management system.

3.     **Cash Collateral Subject to Pre-Petition Liens**.  Until expended by the Debtors, all Cash Collateral shall remain subject to the liens and claims (if any) of the Trustee under the Pre-Petition Bond Documents, but the Pre-Petition Liens shall at all times be subject and subordinate to the DIP Liens and the Carve-Out provided for in the DIP Loan Agreement and any order approving same.

4.     **Termination of Use of Cash Collateral**.  The Debtor's authority to use Cash Collateral shall automatically terminate for all purposes as set forth in the DIP Loan Agreement and any order approving same.

5.     **Adequate Protection**.  As adequate protection for any diminution in the value of the Trustee's interests in the Pre-Petition Collateral, including, without limitation, any diminution resulting from the use of Cash Collateral, the Trustee is hereby granted (in the same priority (if any) as existed in the Pre-Petition Collateral, and only to the extent that the pre-petition liens and

interests of the Trustee are valid, binding, enforceable and non-avoidable), pursuant to Sections 361, 362 and 363 of the Bankruptcy Code, valid, binding, enforceable and automatically perfected liens on and security interests in (collectively, the "**Adequate Protection Liens**") all assets of the Debtors that are of a kind or nature described as Collateral in the Pre-Petition Bond Documents, whether existing or arising prior to, on or after the Petition Date (the "**Replacement Collateral**"). Notwithstanding the foregoing, the Replacement Collateral shall not include any claims or causes of action of the Debtors under 11 U.S.C. §§ 544, 547, 548 or 550 ("**Avoidance Actions**") or any proceeds of any of such claims or causes of action ("**Avoidance Proceeds**"). The Adequate Protection Liens shall at all times be senior to the rights of the Debtors and any successor trustee or estate representative of the Debtors' estate, and any security interest or lien upon the Debtors' assets that is avoided or otherwise preserved for the benefit of the Debtors' estates under Section 551 or any other provision of the Bankruptcy Code shall be subordinate to the Adequate Protection Liens. However, the Adequate Protection Liens shall at all times be junior to the DIP Liens and the Carve-Out provided for in the DIP Loan Agreement and any order approving same. Subject to the provisions of this Order, including, without limitation, the provisions of Paragraph 8, the Adequate Protection Liens and all claims, rights, interests, administrative claims and other protections granted to or for the benefit of the Trustee pursuant to this Order and the Bankruptcy Code shall constitute valid, enforceable, non-avoidable and duly perfected security interests and liens. The Trustee shall not be required to file or record financing statements, mortgages, deeds to secure debt or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession or control, to validate and perfect such security interests and liens.

6.    <u>**Access to Premises and Records; Reporting**</u>.

(a)    The Trustee and its respective representatives and agents (including, without limitation, employees, officers, legal counsel, appraisers, auditors, accountants, and consultants) shall be authorized, during normal business hours upon reasonable notice, to conduct on-site field examinations in order to inspect and evaluate the Debtors' property and financial records, but only to the extent provided for in the Pre-Petition Bond Documents.

(b)    The Debtors will continue to provide to the Trustee all reporting as may be required under the Pre-Petition Bond Documents.

7.    <u>**Survival of Provisions of This Order**</u>.  The provisions of this Order and any action taken pursuant to the terms hereof shall survive the entry of any order dismissing these Cases or converting these Cases to cases under Chapter 7 of the Bankruptcy Code, and all of the terms and conditions of this Order as well as the liens and security interests granted pursuant hereto shall continue in these or in any superseding cases under the Bankruptcy Code, and such liens and security interests shall retain their priorities provided by this Order until satisfied and discharged.

8.    <u>**Reservation of Rights**</u>.  Nothing in this Order shall constitute or be construed to (a) be an admission by the Trustee as to the adequacy of the protection provided herein; (b) prohibit the Trustee from seeking any further relief in these Cases, including, without limitation, additional adequate protection, dismissal or conversion, relief from the automatic stay under Section 362(d) of the Bankruptcy Code, the appointment of a trustee or examiner, or the taking of any Bankruptcy Rule 2004 examinations; (c) constitute a waiver by the Debtors of the right to request a further interim or final order on Cash Collateral provisions which may be different from or in addition to any of the provisions contained in this Order; or (d) preclude the Debtors, any creditor, any

Committee or any subsequently appointed trustee from objecting to or otherwise challenging the validity, perfection, avoidability or amount of the obligations to, or liens asserted by, the Trustee.

9.    **Order Immediately Effective; Survival**.    Notwithstanding anything to the contrary in the Bankruptcy Rules or otherwise, the effectiveness of this Order shall not be stayed, and this Order shall be immediately effective upon its entry.  The provisions of this Order shall survive any dismissal or conversion of these Cases.

10.    **Notice of Final Hearing; Service of Order**.  **A final hearing on the Motion will be held at _____ on September ____, 2021** (the "**Final Hearing**").  **The Final Hearing shall be conducted via Zoom using Judge Bonapfel's Virtual Hearing Room. A link to connect to Judge Bonapfel's Virtual Hearing Room is available on his webpage at https://www.ganb.uscourts.gov/content/honorable-paul-w-bonapfel.  Please join the virtual room 10 minutes prior to the hearing.  If you experience difficulty in connection, please contact the law clerk via email at beth_harrill@ganb.uscourts.gov or by telephone at (404) 215-1020.**  Promptly after the entry of this Order, the Debtors shall serve a copy of this Order and a notice of the Final Hearing, upon the parties served with the Motion, and the Debtors shall file a certificate of service regarding same with the Clerk of the Court.  Such service shall constitute good and sufficient notice of the Final Hearing.

**END OF DOCUMENT**

Prepared and presented by:

SCROGGINS & WILLIAMSON, P.C.


By: _____
      J. ROBERT WILLIAMSON
      Georgia Bar No. 765214
      ASHLEY REYNOLDS RAY
      Georgia Bar No. 601559

MATTHEW W. LEVIN
Georgia Bar No. 448270

4401 Northside Parkway, Suite 450
Atlanta, GA 30327
T: (404) 893-3880
F: (404) 893-3886
E: rwilliamson@swlawfirm.com
   aray@swlawfirm.com
   mlevin@swlawfirm.com

*Proposed Counsel for the Debtor*

### Distribution List

Ashley R. Ray
SCROGGINS & WILLIAMSON, P.C.
4401 Northside Parkway
Suite 450
Atlanta, GA  30327

OFFICE OF THE UNITED STATES TRUSTEE
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303